UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Liban M.J., | Case No. 18-cv-1843 (NEB/ECW) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| Secretary of Department of Homeland Security, *et al.*, | |
| Defendants. | |

---

This matter is before the Court upon Liban M.J.'s ("Petitioner") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Dkt. No. 1) ("Petition") asking the Court to release him from immigration detention or to order a bond hearing to determine if he is a danger to the public or a flight risk. The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that the Petition be granted in part and denied in part.

## I.     BACKGROUND

### A.    Petitioner's Immigration Background

Petitioner is a native and citizen of Somalia. (Dkt. No. 1-1 at 6.) He entered the United States under a visitor visa on or about January 12, 1983 in New York City, New York. (*Id.* at 19.) Petitioner married a U.S. citizen on August 23, 1986 and filed for an adjustment of immigration status in 1987. (*Id.*) He was granted conditional resident

status on January 28, 1988 based on his marriage to a U.S. citizen. (*Id.*) Petitioner and his then-wife divorced in early 1989 and his conditional resident status was terminated. (*Id.*) On March 23, 1989, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause and Notice of Hearing on deportation proceedings based on the termination of Petitioner's conditional resident status. (*Id.* at 6.) Petitioner alleges he did not receive the notice from INS because of the divorce and separation from his ex-wife, and he did not attend the hearing. (*Id.* at 26.) After a hearing *in absentia*, Petitioner was ordered deported to Somalia under the Immigration and Nationality Act ("INA") § 243(1) on July 12, 1989. (Dkt. No. 7-1, Ex. A at 5.) Petitioner alleges he did not become aware of the deportation order until 2005. (Dkt. No. 1-1 at 19.)

Immigration and Customs Enforcement ("ICE") took Petitioner into custody in 2005 but was unable to deport him due to circumstances in Somalia at the time. (Dkt. No. 7-1, Ex. A at 9.) Instead, ICE released Petitioner under an Order of Supervision and monthly report to the Detention and Removal Operations ("DRO"). (*Id.* at 11.)

**B.    Petitioner's Criminal Record**

On December 3, 1991, Petitioner was sentenced to a 12-year term in the Commonwealth of Virginia for felony robbery and attempted robbery. (Dkt. No. 7-1, Ex. A at 30-31.) In addition to that felony conviction, DHS's Record on Petitioner indicates that he has been arrested for other crimes, including Misdemeanor Larceny (1989), Felony Uttering a Forged Check (1989), Felony Failure to Appear on Felony Uttering, which was dismissed (1989), Felony Robbery (1990), Felony Robbery (1991), Felony Attempted Robbery (1991), Misdemeanor Driving While Intoxicated, 1st Offense (2008),

Misdemeanor Assault on a Family Member (2009), Misdemeanor Possession of Marijuana (2009), Felony Disregard Law Enforcement Command or Elude Police (2009), Felony Driving While Intoxicated, 3rd Offense (2009), Felony Grand Larceny greater than $200 charge (2009), Misdemeanor Driving While Intoxicated, 1st Offense (2009), Misdemeanor Driving After Forfeiture of License (2009), Misdemeanor Contempt of Court (2009), Felony Probation Violation on Felony Offense (2010), 1st Degree Criminal Sexual Conduct (2016), and 1st Degree Controlled Substance (2017). (Dkt. No. 7-1, Ex. A, at 14-16.)

After Petitioner's most recent arrest, on November 19, 2017, ICE alleges it encountered Petitioner at the Hennepin County Jail where he was in custody, and took custody of Petitioner, booking him into the Freeborn County Jail on November 21, 2017. (Dkt. No. 7-1, Ex. A at 14.) The Embassy of Somalia issued a temporary Somali travel document to Petitioner on February 1, 2018, which expired on August 2, 2018. (*Id.* at 20.)

## C. Petitioner's Removal Proceedings

Petitioner filed a motion to reopen his removal proceedings on December 19, 2017, and an amended motion to reopen his removal proceedings on February 4, 2018. (Dkt. No. 1-1, Ex. 1 at 8; Dkt. No. 7-1, Ex. A at 21-26.) Petitioner challenged the 1989 Removal order *in absentia*, arguing that he did not receive notice of the hearing and could not have attended the hearing because he was incarcerated at the Fairfax County Jail. (Dkt. No. 7-1, Ex. A at 21-26.) Immigration Judge ("IJ") Lisa Dornell granted the motion to reopen on March 29, 2018, finding that Petitioner had shown good cause for

3

his failure to attend the 1989 hearing.  (*Id.* at 27-28.)  Prior to IJ Dornell's order, Petitioner also filed Applications for Asylum, Withholding of Removal, and Relief under the Convention Against Torture.  (*Id.* at 38.)  IJ Sarah B. Mazzie held an individual hearing on Petitioner's Applications on May 23, 2018.  (*Id.*)  On June 8, 2018, IJ Mazzie denied Petitioner's Applications and ordered that Petitioner be deported and removed to Somalia.  (*Id.* at 46.)  On June 18, 2018, Petitioner filed an appeal to the Board of Immigration Appeals ("BIA") of IJ Mazzie's decision.  (Dkt. No. 1-1, Ex. 1 at 1-5.)

Petitioner filed the present Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 on July 2, 2018.  (Dkt. No. 1.)

## II.     LEGAL STANDARD

### A.     Detention under Habeas Corpus

"Writs of habeas corpus may be granted by the Supreme Court, ... the district courts and any circuit judge within their respective jurisdictions."  28 U.S.C. § 2241(a). "The writ of habeas corpus shall not extend to a prisoner unless ... [h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3). Congress has imposed statutory limits on habeas corpus petitions in immigration proceedings.  For example, a petition for review from an order of removal cannot be brought under the habeas statute and must go directly to the circuit courts of appeals.  *See* 8 U.S.C. § 1252(a)(5).  While § 2241 confers jurisdiction upon federal courts to hear habeas challenges to the lawfulness of immigration-related detentions, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001), judicial review of detention decisions made under 8 U.S.C. § 1226 is limited by the following provision:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

*Id.* § 1226(e); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003). However, the Supreme Court has determined that § 1226(e) does not bar a constitutional challenge to the length of pre-removal detention. *See Demore*, 538 U.S. at 517; *Zadvydas*, 533 U.S. at 688; *see also Davies v. Tritten*, No. 17-cv-3710 (SRN/SER), 2017 WL 4277145, at *2 (D. Minn. Sept. 25, 2017).

**B.     Detention of Aliens under 8 U.S.C. § 1226(c)**

INS detained Petitioner pursuant to 8 U.S.C. § 1226(c) because he was detained and charged with removability based on a conviction which qualifies as an aggravated felony. *See* 8 U.S.C. § 1226(c)(1)(B), (C). Under Section 1226(c)(2):

> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.

8 U.S.C. § 1226(c)(2).

Section "1226(c) *mandates* detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is

5

released for witness-protection purposes." *Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018) (emphasis added).

Regardless of the language of § 1226(c) requiring mandatory detention of aliens, the Fifth Amendment's Due Process Clause forbids the Government from "depriv[ing]" any "person . . . of . . . liberty . . . without due process of law." U.S. Const. amend. V. "[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Supreme Court has emphasized that "[f]reedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. Indeed, the United States Supreme Court has affirmed that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.*; *see generally*, *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (holding that, in order to justify continued confinement of a mentally ill person after a not-guilty-by-reason-of-insanity verdict for the purposes of due process, a state bears the burden of showing "by clear and convincing evidence that the individual is mentally ill and dangerous.") (internal quotation marks omitted).

In *Zadvydas*, the Supreme Court examined a different statute, 8 U.S.C. § 1231(a)(6), which provides that certain aliens who have been ordered to be removed may be detained "beyond the removal period and, if released, shall be subject to [certain] terms of supervision." The Court rejected a literal reading of 8 U.S.C. § 1231(a)(6), expressing concern that detention under § 1231(a)(6), which often occurs when the DHS has difficulty finding placement for an alien abroad, could become indefinite. 533 U.S. at

682.  The Court noted "the serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any such protection is obvious." *Id.* at 692.  The Court concluded that in order to avoid this possible constitutional problem, detention pursuant to § 1231(a)(6) is presumed reasonable for six months.  *Id.* at 701.  Continued detention after six months is unlawful if (1) an alien shows that there is no significant likelihood of removal in the reasonably foreseeable future and (2) the government is unable to rebut this showing with evidence.  *Id.* at 701.

In *Demore*, the Supreme Court subsequently held that the mandatory detention of an alien under § 1226(c) was a constitutionally permissible part of the removal process for the "limited period" required to complete the removal proceedings.  538 U.S. at 531. The *Demore* Court distinguished its decision in *Zadvydas* where it held that an alien subject to a final order of removal could not be indefinitely detained pursuant to 8 U.S.C. § 1231, the statute that pertains to the detention of aliens ordered removed.  *Id.* at 527-30. First, the Court emphasized that detention under § 1226(c) served the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings.  *Id.* at 528.  More importantly, the Supreme Court noted that aliens detained under § 1226(c) spend an average of forty-seven days in government custody pending the conclusion of removal proceedings and an average of four months in custody if they appeal, a period just under six months.  *Id.* at 529.  According to the Court in *Demore*, this "limited period" of detention during removal proceedings was "a constitutionally permissible part of the process."  *Id.* at 530.  Justice Kennedy in his concurrence found

7

that while 1226(s) is not *per se* unconstitutional, "were there to be an unreasonable delay by the [government] in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Id.* at 532-33 (Kennedy, J., concurring).

Subsequently, the Supreme Court in *Jennings*, *supra*, called into question whether due process requires a six-month bright-line limitation on the detention of aliens under Section 1226(c). The Court reversed the Ninth Circuit's holding that noncitizens detained under 8 U.S.C. §§ 1225(b)(1), (b)(2), and 1226(c) were entitled to bond hearings every six months. *See Jennings*, 138 S. Ct. at 839, 842. The Court held that the plain language of 1226(c) was unambiguous and "makes clear that detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.'" *Jennings*, 138 S. Ct. at 846 (emphasis in original); *see also Borbot v. Warden Hudson Cty. Corr. Facility*, No. 17-2814, 2018 WL 4997934, at *3 (3d Cir. Oct. 16, 2018) ("By its terms, § 1226(c) does not entitle detainees to a bond hearing.").

However, the Court in *Jennings*, declined to reach the issue of whether prolonged detention under §1226(c) is at a certain point unconstitutional. *Id.* at 851 ("Because the Court of Appeals erroneously concluded that periodic bond hearings are required under the immigration provisions at issue here, it had no occasion to consider respondents' constitutional arguments on their merits.... [W]e remand the case to the Court of Appeals to consider them in the first instance."); *see also Borbot*, 2018 WL 4997934, at *4

("*Jennings* did not call into question our constitutional holding . . . that detention under § 1226(c) may violate due process if unreasonably long.").

While the Eighth Circuit has not addressed detention under § 1226(c) after *Jennings*, courts in this District have addressed due process challenges to prolonged detention under § 1226(c) and have concluded that the Due Process Clause imposes a limitation on the length of § 1226(c) detention.  These courts have concluded that a due-process challenge to § 1226(c) detention must be resolved by closely examining the facts of the particular case to determine whether the detention is reasonable.  *See*, *e.g.*, *Muse v. Sessions*, No. 18-cv-0054 (PJS/LIB), 2018 WL 4466052, at *3 (D. Minn. Sep. 18, 2018); *Mohamed v. Sec'y, Dep't of Homeland Sec.*, No. 17-cv-5055 (DWF/DTS), 2018 WL 2392205, at *5 (D. Minn. Mar. 26, 2018), *R. & R. adopted*, 2018 WL 2390132 (D. Minn. May 25, 2018).

Judge Patrick J. Schiltz, in his survey of post-*Jennings* caselaw, noted that courts using a fact-specific inquiry in the context of detention under § 1226(c) have examined several factors to guide them in identifying when "continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community."  *Muse*, 2018 WL 4466052, at *3 (marks and citation omitted).  These factors include: (1) the total length of detention to date, (2) the likely duration of future detention, (3) the conditions of detention, (4) delays of the removal proceedings caused by the detainee, (5) delays of the removal proceedings caused by the

9

government, and (6) the likelihood that the removal proceedings will result in a final order of removal. *Id.* (citing *Reid v. Donelan*, 819 F.3d 486 (1st Cir. 2016), *withdrawn*, *Reid v. Donelan*, No. 14-1270, 2018 WL 4000993 (1st Cir. May 11, 2018)).[1] Based on the Supreme Court's holding in *Jennings*, the Court sees no reason to depart from the *Muse* court's approach to determining when an alien detained under § 1226(c) is entitled to a bond hearing to prevent a possible violation of Petitioner's due process rights. Indeed, a number of courts (post-*Jennings*) have undertaken an individualized fact-specific inquiry in determining if § 1226(c) detainees are entitled to hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the public. *See*, *e.g.*, *Cabral v. Decker*, No. 18 CIV. 4823 (JGK), 2018 WL 4521199, at *4-5 (S.D.N.Y. Sept. 21, 2018); *Thompson v. Edwards*, No. CV 18-1006 (ES), 2018 WL 4442225, at *4 (D.N.J. Sept. 17, 2018) (granting habeas relief concluding that the petitioner's 26-month detention was unreasonable under the facts presented); *Vega v. Doll*, No. CV 3:17-1440, 2018 WL 3756755, at *4 (M.D. Pa. Aug. 8, 2018); *Dryden v. Green*, 321 F. Supp. 3d 496, 502 (D.N.J. 2018); *Sajous v. Decker*, 18-CV-2447 (AJN), 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018) ("Rather than employ a brightline rule, the Court concludes that whether mandatory detention under §

---

[1] While the First Circuit withdrew its opinion in *Reid*, it affirmed the district court's judgment as to its individualized holding with respect to Reid's habeas corpus petition that the detention had become unreasonable, and therefore he was entitled to a bond hearing. *See Reid*, 2018 WL 4000993, at *1; *Reid*, 819 F.3d at 501. The Court looks only to *Reid's* analysis of this individualized decision, rather than the withdrawn holding on the general constitutionality of § 1226.

1226(c) has become 'unreasonable,' and thus a due process violation, must be decided using an as-applied, fact-based analysis" "requiring an assessment of all the circumstances of any given case.").

### III.   ANALYSIS

#### A.   Applicability of § 1226(c) to Petitioner

Petitioner argues he is not subject to § 1226(c) "because he was not taken into custody by DHS pursuant to § 1226(c) 'when released' from non-DHS custody after serving a sentence for an offense described in § 1226(c)(1)."[2] (Dkt. No. 10 at 13.) As Petitioner correctly acknowledges, there is a circuit split on this issue, and the issue is currently pending before the Supreme Court. *See Nielsen v. Preap*, 138 S. Ct. 1279 (2018). The Eighth Circuit has not ruled on the issue. On the one hand, the First and Ninth Circuits have held that § 1226(c)'s "when released" language requires ICE to "promptly" take an alien into custody upon their release from triggering criminal custody. *Preap v. Johnson*, 831 F.3d 1193, 1207 (9th Cir. 2016), *cert. granted sub. nom. Nielsen*, 138 S. Ct. 1279; *Castaneda v. Souza*, 810 F.3d 15, 42 (1st Cir. 2015). On the other hand, the Second, Third, Fourth, and Tenth Circuits have held that ICE can take an alien into

---

[2]   Petitioner also appears to argue that he cannot be detained pursuant to § 1226(c) because he was already in custody under § 1231 and was detained under § 1226(c) only after prevailing on his motion to reopen. (Dkt. No. 10 at 15.) The argument was raised in Petitioner's reply brief, and Petitioner did not cite any legal authority to support this reasoning (or provide any argument other than a cursory assertion). Under these circumstances, the Court declines to recommend Petitioner's release on that ground. *See Navarijo-Barrios v. Ashcroft*, 322 F.3d 561, 564 (8th Cir. 2003) (noting that courts generally "do not consider arguments raised for the first time in a reply brief").

custody any time after the triggering custody, for two distinct reasons as summarized below. *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), *cert granted and judgment vacated on other grounds*, 138 S. Ct. 1260 (Mar. 5, 2018); *Sylvain v. Atty Gen. of United States*, 714 F.3d 150 (3d Cir. 2013); *Hosh v. Lucero*, 680 F.3d 375 (4th Cir. 2012); *Olmos v. Holder*, 780 F.3d 1313, 1322 (10th Cir. 2015).

The Second, Fourth, and Tenth Circuits held that the statutory language was ambiguous, and gave *Chevron* deference to the BIA's interpretation in *In re Rojas*, 23 I. & N. Dec. 117 (BIA 2001), which determined that "when released" referred to the sequence of events rather than the timing. *See Lora*, 804 F.3d at 612; *Hosh v. Lucero*, 680 F.3d 375, 380-81 (4th Cir. 2012); *Olmos v. Holder*, 780 F.3d 1313, 1322 (10th Cir. 2015). The Third Circuit, as well as the Second and Tenth Circuits as an alternative, applied the loss-of-authority rule, finding that the Attorney General's duty to detain criminal aliens under § 1226(c)(1) continues even if the government fails to comply with the "when . . . released" condition. *See Sylvain v. Att'y Gen. of United States*, 714 F.3d 150, 157 (3d Cir. 2013) (holding that "[e]ven if the statute calls for detention 'when the alien is released,' and even if 'when' implies something less than four years, nothing in the statute suggests that immigration officials lose authority if they delay"); *see also Lora*, 804 F.3d at 612; *Olmos*, 780 F.3d at 1325-26.

In addition, one court in this District has decided this issue. *See Cisneros v. Napolitano*, CIV. 13-700 JNE/JJK, 2013 WL 3353939, at *1 (D. Minn. July 3, 2013). In *Cisneros*, Judge Joan N. Ericksen adopted Magistrate Judge Jeffrey J. Keyes' report and recommendation to deny a habeas petition to an alien who was detained by ICE eight

years after his release from prison. *Id.* at *1-2. Judge Ericksen found that *Chevron* deference was appropriate and that INS's authority to detain an alien is not explicitly removed by the language of § 1226(c). *Id.* at *1.

The Court finds the reasoning of the Second, Third, Fourth, and Tenth Circuits, as well as Judge Ericksen's reasoning, persuasive. The Court agrees that the statutory language of § 1226(c) is ambiguous and that applying *Chevron* deference to the BIA is appropriate since its interpretation is reasonable, and that the statute does not explicitly remove authority if an alien has left custody. *Id.* The Court therefore concludes that § 1226(c) applies to Petitioner notwithstanding the fact that Petitioner was not taken into custody under § 1226(c) until at least seven years after his release from non-DHS custody after serving a sentence for an offense described in § 1226(c)(1).

**B.     Petitioner Is Entitled to a Bond Hearing**

The first and most important factor that courts analyze when determining if an alien detained under § 1226(c) is entitled to a bond hearing is the length of the detention to date. *See Muse*, 2018 WL 4466052, at *4 ("How long this deprivation has lasted is critical to the due-process inquiry."). Petitioner has been detained since November 21, 2017, meaning he has now been held without a bond hearing for more than 12 months. The 12-month detention is "considerably longer than the 'brief' period assumed in *Demore*." *Alier D., Petr., v. Sec. of Dept. of Homeland Security*, 18-CV-01645 (NEB/HB), 2018 WL 5849477, at *6 (D. Minn. Sept. 28, 2018). Indeed, the reasoning of both *Demore* and *Jennings* is predicated on the detention under § 1226(c) being "brief" and having a "definite termination point." *Demore*, 538 U.S. at 531 (noting the "limited

13

period" of detention); *Jennings*, 138 S. Ct. 830, 846 (2018) (noting the "definite termination point").

This 12-month detention is within the range courts have found sufficient to require a bond hearing under the Due Process Clause. *See, e.g.*, *Cabral v. Decker*, No. 18 CIV. 4823 (JGK), 2018 WL 4521199, at *5 (S.D.N.Y. Sept. 21, 2018) (seven months); *Thomas C.A. v. Green*, No. 18-1004, 2018 WL 4110941, at *5-6 (D.N.J. Aug. 29, 2018) (fifteen months); *Portillo v. Hott*, 322 F. Supp. 3d 698, 707 (E.D. Va. 2018) (fourteen months); *Sajous*, 2018 WL 2357266, at *1, *7 (eight months); *Mohamed*, 2018 WL 2390132 at *1 (fifteen months). "As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Muse*, 2018 WL 4466052, at *4. This factor weighs in favor of granting relief.

The second factor is the likely duration of future detention in the absence of judicial relief. *Muse*, 2018 WL 4466052, at *4. In estimating when detention will end, courts take into account the anticipated duration of all removal proceedings, including administrative and judicial appeals. *Id.* (citing *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) ("The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability.")). Petitioner appealed to the BIA on June 18, 2018, and the parties only recently completed briefing. (Dkt. No. 10 at 4.) The BIA proceedings will likely take a few months and may be followed by an appeal to the Eighth Circuit, which could take many more months. Moreover, Petitioner's temporary Somali travel document has expired, so it is not clear whether ICE will be able to deport

14

him if a final order is rendered, thereby potentially extending his time in custody further. Accordingly, this factor weighs in Petitioner's favor.

The third factor is the conditions of the petitioner's detention. Aliens detained under § 1226(c) are subject to civil detention rather than criminal incarceration. *Muse*, 2018 WL 4466052, at *4 (citation omitted). Petitioner is held at the Freeborn County Jail apparently alongside prisoners serving criminal sentences. This Court cannot ignore the fact that deprivations to liberties caused by civil detention brought about by § 1226(c) is not meaningfully differentiated from penal measures. *See Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 220 n.9 (3d Cir. 2018) (citing *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469, 478 (3d Cir. 2015)); *Muse*, 2018 WL 4466052, at *5 ("The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing."). As the length of the detention grows, the weight given to this aspect of his detention increases. *Id.* This factor therefore weighs in Petitioner's favor. *Alier D., Petr.*, 2018 WL 5849477, at *6.

The fourth factor is whether there have been any delays of the removal proceedings caused by the detainee. *See Muse*, 2018 WL 4466052, at *5-6. There is no evidence in the record of any undue delays caused by Petitioner. Petitioner's decision to reopen his proceeding and pursue appeals does not count as a delay in the removal proceedings under this factor. *See Tindi v. Sec., Dept. of Homeland Sec.*, CV 17-3663(DSD/DTS), 2018 WL 704314, at *3 (D. Minn. Feb. 5, 2018) (noting that "appeals

15

and petitions for relief are to be expected as a natural part of the process"). Accordingly, this factor weighs in Petitioner's favor.

The fifth factor is whether there have been any delays of the removal proceedings caused by the government. *See Muse*, 2018 WL 4466052, at *6. The Court is not aware of any delays caused by the government. Like Petitioner's right to appeal, the government is permitted to make arguments and appeals in support of its position. Accordingly, this factor weighs in favor of the government.

The sixth and final factor is the likelihood that the removal proceedings will result in a final order of removal. "Higher likelihood of the alien's removal means longer periods of detention may be reasonable." *Alier D., Petr.*, 2018 WL 5849477, at *7. Although IJ Mazzie ordered Petitioner removed, he has since appealed to the BIA. The Court is not in a position to weigh the merits of the removal order, and therefore finds this factor neutral.

In sum, the Court finds that four factors weigh in Petitioner's favor, one factor weighs in the government's favor, and one is neutral. Based on this individualized fact-specific inquiry of Petitioner's detention, the Court concludes that continued detention of Petitioner without a bond hearing would deprive him of his right to due process under the Fifth Amendment. A bond hearing at which the parties may present evidence and argument concerning whether Petitioner is a danger to the community or likely to flee if not detained "will protect both [Petitioner's] rights under the Due Process Clause and the government's legitimate interest in detaining a removable alien when such detention is necessary to serve the purposes of § 1226(c)." *Muse*, 2018 WL 4466052 at *6. While

the Court does not recommend Petitioner's immediate release, it recommends that the District Court order the IJ to conduct a bond hearing within 30 days after the adoption of this Report and Recommendation.

## IV. RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1) be **GRANTED** in part and **DENIED** in part as follows:

1. Petitioner's request for immediate release be **DENIED**.

2. To the extent that the District Court adopts this Report and Recommendation, an immigration judge should provide Petitioner with a bond hearing within thirty days of the District Court's order. At the bond hearing, the immigration judge should make an individualized determination whether Petitioner's continued detention is necessary to protect the public or to prevent Petitioner from fleeing during the pendency of immigration proceedings.

DATED: December 10, 2018         *s/ Elizabeth Cowan Wright*
                                 ELIZABETH COWAN WRIGHT
                                 United States Magistrate Judge

## **<u>NOTICE</u>**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).